**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Titus Tjalas, et al., | No. CV-24-01641-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Kevin Reese Ruark, et al., | |
| Defendants. | |

This matter is before the Court on Plaintiffs' Amended Motion to Appoint Receiver. (Doc. 93.) The motion is fully briefed. (Docs. 93, 103, 106.) The Court finds it appropriate to decide the motion without oral argument or an evidentiary hearing. For the following reasons, the Court grants the motion in part and will appoint a receiver over Atlantic Home Health Care LLC and Atlantic Home Health Care LLC dba Haven Home Health Care LLC.

## I.    BACKGROUND

This is a Civil Racketeer Influenced and Corrupt Organizations Act ("RICO") case "predicated on mail fraud, wire fraud, and financial institution fraud." 18 U.S.C. § 1961 *et seq.*; (Doc. 90 at 1). Plaintiffs Act Now Management LLC, Act Now Health Care Solutions LLC, Atlantic Home Health Care LLC, Atlantic Home Health Care LLC dba Haven Home Health Care LLC, and Titus Tjalas (formerly known as Kirk Tjalas) allege that a slew of defendants

> engaged in a several years' long pattern and practice of unlawfully sweeping funds from the bank account(s) of Plaintiff[s] Atlantic Home Health Care, LLC ("AHHC 1") and/or Atlantic Home Health Care, LLC dba Haven Home

Health Care, LLC ("AHHC 2") into the bank accounts of multiple other insider entities to deplete the funds of AHHC 1 and AHHC2 simultaneously leaving Plaintiffs with significant tax liabilities and tax liens and with a loss of millions of dollars in income.

(Doc. 90 at 1.)

Plaintiffs commenced this action on July 3, 2024. (Doc. 1.) On September 18, 2025, this Court granted Defendant Brian Friedberg's Motion to Adopt the Motion to Strike and Motion to Adopt Reply to Motion to Strike (Docs. 53, 69), granted the other Defendants' Motion to Strike (Doc. 51), and struck Plaintiffs' first amended complaint (Doc. 17). (Doc. 88.)

On October 24, 2025, Plaintiffs filed a second amended complaint ("SAC"). (Doc. 90.) Plaintiffs also filed an Amended Motion to Appoint Receiver (Doc. 93) on October 30, 2025. Plaintiffs request that a receiver be appointed for AHHC 1 and AHHC 2 (collectively, the "Atlantic Companies"), and Defendant Haven EEOI Holdings, LLC ("Haven EEOI"). (Doc. 93 at 1-2.)

On December 1, 2025, Defendants Jamin Ruark, Lauren Ratiani, Haven Holdings MI LLC, Haven EEOI, and Charis Healthcare Holdings LLC (the "Haven Defendants") and Defendants Kevin Ruark, Janice Ruark, the Charis Foundation Inc., Matthew and Breeana Saagman, and Absolutely Haven LLC (the "Charis Defendants") jointly responded in opposition. (Doc. 103.)

On December 8, 2025, Plaintiffs filed their reply. (Doc. 106.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 66 "governs the appointment of a receiver in federal court." *Off. Depot Inc. v. Zuccarini*, 596 F.3d 696, 701 (9th Cir. 2010); *see also Can. Life Assurance Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009). Rule 66 provides:

These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order.

- 2 -

Fed. R. Civ. P. 66.

Appointment of "a receiver is an extraordinary equitable remedy, which should be applied with caution." *Can. Life*, 563 F.3d at 844 (quotation marks omitted). A motion for appointment of a receiver should be "granted only in cases of clear necessity to protect plaintiff's interests in the property." *Solis v. Matheson*, 563 F.3d 425, 437 (9th Cir. 2009) (citation omitted). A district court has "broad powers and wide discretion" in deciding whether to appoint a receiver. *See SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978); *see also Can. Life*, 563 F.3d at 845. And the "power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power . . . . [but] derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).

Although "there is no precise formula for determining when a receiver may be appointed," the Ninth Circuit directs courts to consider:

> (1) whether [the party] seeking the appointment has a valid claim;
> (2) whether there is fraudulent conduct or the probability of fraudulent conduct, by the defendant;
> (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered;
> (4) whether legal remedies are inadequate;
> (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment;
> (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and,
> (7) whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Can. Life*, 563 F.3d at 844 (alterations in original) (citation and quotation marks omitted).

No single factor is dispositive, and courts may "consider a host of relevant factors." *Id.* at 845.

## III.    DISCUSSION

Applying the *Canada Life* Factors, the Court evaluates whether Plaintiffs have demonstrated that appointment of a receiver is appropriate in this case.

- 3 -

### A.    Valid Claim

The first factor is whether Plaintiffs have a valid claim. *Id.* at 844. The Court previously held in its Order denying Defendants' motions to strike the SAC that Plaintiffs state a plausible claim for relief that satisfies Rule 9's heightened pleading standard. (Doc. 108 at 5); Fed. R. Civ. P. 9; *see Magma Holding, Inc. v. Au-Yeung*, No. 2:20-cv-00406-RFB-BNW, 2020 WL 2025365, at *9 (D. Nev. Apr. 26, 2020) (finding first factor weighed in favor of appointing receiver where court determined that the movant "pled legally plausible claims for civil conspiracy, unjust enrichment, alter ego, and injunctive relief for an accounting of the property at issue").*

But the mere fact of a valid claim in this lawsuit is not enough to appoint a receiver with managerial authority. "Because a receivership is a serious interference with the opposing party's property rights, including possession or control, the party seeking the receivership must show . . . 'some legally recognized right in that property that amounts to more than a mere claim against [the opponent].'" *Metro. Life Ins. Co. v. Gicana*, No. CV 16-08317-RSWL (RAOx), 2019 WL 4316515, at *3 (C.D. Cal. Aug. 2, 2019) (second alteration in original) (quoting 12 Wright & Miller, Fed. Prac. & Proc. Civ. § 2383 (3d ed., Apr. 2019 update)), *report and recommendation adopted*, 2019 WL 5102461 (C.D. Cal. Oct. 11, 2019).

Here, Plaintiffs Act Now Management LLC, Act Now Health Care Solutions LLC, and Tjalas allege a 50% membership interest in AHHC 1, and Act Now Health Care Solutions LLC and Tjalas allege a 50% membership interest in AHHC 2. (Doc. 90 ¶¶ 8, 11.) The Charis Defendants and the Haven Defendants do not dispute that at least one of these plaintiffs has a membership interest in the Atlantic Companies. (*See* Doc. 109 ¶¶ 8, 11; Doc. 110 ¶¶ 8, 11.) Plaintiffs do not appear to have alleged a similar interest in Haven EEOI, and in their briefing, indicate they do not have such an interest in that entity. (Doc.

---

* The Court rejects Defendants' argument that Plaintiffs have filed three separate lawsuits based on the same operative facts of this case. The first federal lawsuit was dismissed without prejudice for lack of diversity jurisdiction, *Tjalas v. Ruark*, No. CV-24-00462-PHX-DLR, 2024 WL 1142075 (D. Ariz. Mar. 15, 2024), and the state court action was voluntarily dismissed, *Tjalas v. Ruark*, CV2024-006092 (Maricopa Cnty., Super. Ct., Jul. 2, 2024). Thus, Plaintiffs' allegations have never been heard on the merits.

93 at 10.)

Because the Court has previously determined that Plaintiffs have stated a valid claim and because it appears undisputed that at least one of the plaintiffs has a property interest in the Atlantic Companies, the Court finds this factor to weigh in favor of appointing a receiver.

### B.    Fraudulent Conduct

The second factor is whether Plaintiffs have presented evidence of Defendants' alleged fraudulent conduct. *See Can. Life*, 563 F.3d at 844. "This factor does not require actual fraud be established, and non-fraudulent conduct can give rise to an inference of fraud." *KS StateBank Corp. v. Peters*, No. CV-25-02576-PHX-ROS, 2025 WL 3294967, at *4 (D. Ariz. Nov. 26, 2025).

Plaintiffs allege numerous supposed fraudulent activities by Defendants, including (1) transferring all of the patients and income into a company in which Plaintiffs have no interest, (2) diverting tens of millions of dollars to various entities, (3) failing to pay payroll taxes, and (4) "continuing to book all income under [the] Atlantic Companies (despite having removed all of Atlantic Companies' income earning assets)" and "booking all payments by [Haven] EEOI to the IRS or DOJ on behalf of [the] Atlantic Companies (using income earned from Atlantic Companies' patients) as 'loans' from [Haven] EEOI to Atlantic Companies." (Doc. 93 at 10-11.) However, most of Plaintiffs' supporting evidence is from Plaintiff Tjalas' affidavit and his account of events in the SAC. (*See id.* at 10-11; Doc. 93-1.)

In response, the Haven and Charis Defendants do not dispute that the SAC "alleges a sprawling, fraudulent criminal conspiracy." (Doc. 103 at 5.) Rather, they argue that Tjalas is the bad actor because of a prior case resulting in a settlement between Plaintiffs and some of the Defendants with the Department of Justice ("DOJ") for nearly $10 million. (*Id.* at 4-5.) Plaintiffs argue this settlement included a penalty provision that doubles the financial penalty if the Atlantic Companies default on the settlement payment, otherwise fail to comply with the settlement agreement, or are found to have provided false financial

information to the DOJ. (*See* Doc. 103 at 4-5; Doc. 93 at 4-5); Doc. 36, *Cass v. Atl. Home Health Care LLC*, No. CV-20-00202-TUC-AMM (D. Ariz. Feb. 13, 2024) (containing settlement agreement). The defendants in that case allegedly violated the False Claims Act, 31 U.S.C. § 3729, and unlawfully billed the United States for in-home patient care that was never provided. *See* Doc. 1, *Cass* (May 11, 2020).

The Court cannot definitively determine at this stage whether Defendants have engaged in fraudulent conduct and/or continued to engage in fraudulent conduct that would deprive Plaintiffs of their alleged property rights. *See Semiserve, Inc. v. Semicon Servs., LLC*, No. SACV 14-02009-JLS (DFMx), 2015 WL 12914382, at *6 (C.D. Cal. June 17, 2015) ("Because the parties[] heavily dispute the circumstances surrounding the transactions and accounting decisions that serve as the basis for Plaintiffs' Motion, the Court cannot definitively determine at this stage whether Defendant has engaged in fraudulent conduct . . . ."). This uncertainty would ordinarily cause this factor to be neutral or weigh against appointing a receiver. But in their answers, the Haven and Charis Defendants appear to admit that some transfers were made out of the Atlantic Companies but allege that the "distributions" were proper in light of actions taken by Tjalas. (*See* Doc. 109 ¶¶ 151-54; Doc. 110 ¶¶ 151-54.) The Court also notes that the Haven Defendants have asserted counterclaims, cross-claims, and third-party claims and allege that patients and funds were illegally recruited from the Atlantic Companies and Haven EEOI after Tjalas allegedly stole proprietary and confidential information. (Doc. 110 at 68-69.)

As stated, given the complexity of the fraud allegations in this matter and because the record is presently undeveloped, the Court cannot determine if Plaintiffs' fraud allegations have merit. But it appears evident from the parties' pleadings that they generally agree that *something*—whether patients, funds, or otherwise—has been taken from the Atlantic Companies but disagree about who is culpable for such actions and who had the lawful ability to do it. As another court reasoned in similar circumstances:

> At this stage, this Court need not determine who is telling the truth. Both Plaintiff and Defendants point to movements of money out of the business. The second and third *Canada Life* factors, which go to the probability of

fraud and the danger that the property may be lost, concealed, injured, diminished in value, or squandered, respectively, would support the appointment of a receiver regardless of whether Plaintiff is or Defendants are ultimately found to be the bad actor. There is ongoing misconduct by *someone*, which weighs in favor of a court-appointed neutral receiver to oversee the business until the Court can determine who is at fault.

*Rio Verde Plantas, LLC v. O&S Holdings, LLC*, No. 3:25-CV-00098-JR, 2025 WL 1141184, at *2 (D. Or. Apr. 17, 2025).

Therefore, the Court finds this factor to weigh in favor of appointing a receiver.

### C.    Imminent Danger of Property Being Lost, Concealed, Injured, Diminished in Value, or Squandered

The third factor considers whether Plaintiffs have established that the property is in "imminent danger of being lost, concealed, injured, diminished in value, or squandered." *Can. Life*, 563 F.3d at 844 (quotation marks omitted). Plaintiffs allege that Defendants "already removed all of Atlantic Companies' remaining patients and income earning capacity into their insider entity [Haven] EEOI" while this case was pending. (Doc. 93 at 11.) Plaintiffs also allege that Defendants Jamin Ruark and Matthew Saagman entered "multiple predatory and usurious loans selling a percentage of Atlantic Companies' non-existent weekly income." (*Id.*); *see Atl. Home Health Care LLC v. Wynwest Advance LLC*, No. 25-cv-04365-RFL (N.D. Cal.). In the Northern District of California case, Defendants Jamin Ruark and Matthew Saagman are the plaintiffs and they allege that they were victims of unlawful lending practices for loans they took out on behalf of Atlantic Home Health Care LLC. (*See* Doc. 93-4 at 9-33.)

In response, Defendants allege that Plaintiffs waited too long to seek relief and that the alleged danger is speculative. (Doc. 103 at 5-6.) However, the action in the Northern District of California commenced in May 2025, so Plaintiffs were likely not on notice of the imminent danger of the alleged loan fraud until recently. Also, Defendants Jamin Ruark and Matthew Saagman admitted that their actions of entering predatory loans would cause at least one of the Atlantic Companies to "suffer imminent risk of business failure." (Doc.

106 at 5; Doc. 93-4 at 26.) Further, according to the allegations in the SAC in this action, that tax liens have been imposed in the aftermath of the alleged unlawful transfers and that the Atlantic Companies have been left insolvent and unable to pay tax liabilities also support that the property is in danger of being lost, injured, or diminished in value. *See 54 Dyer LP v. Ambruso*, No. 2:21-CV-09306-SVW-SK, 2022 WL 1840344, at \*8 (C.D. Cal. Mar. 21, 2022) ("[T]hat the [tax] liens continue to accrue without any sort of payment weighs in favor of a receivership." (emphasis omitted)); *Cal. Bank & Tr. v. Shilo Inn*, No. 1:12-CV-00141-CWD, 2012 WL 1883474, at \*6 (D. Idaho May 22, 2012) (finding this factor weighed in favor of a receiver where the defendant did "not dispute that it . . . failed to pay property taxes for two years, and ha[d] not paid its loan obligations since October of 2011, thereby raising the question of mismanagement if it lacks the resources to meet its continuing obligations, or at worst, diversion of funds for other purposes").

On the other hand, it is unclear whether the property is in *imminent* danger of being lost, injured, or diminished in value. According to the SAC, the alleged transfers of patients and money from the Atlantic Companies occurred years ago, and there is nothing to indicate that (1) there are any other patients or funds to transfer or (2) any action has been taken on the liens in the time since the alleged transfers occurred. (*See also* Doc. 93 at 5 ("The transfer of patients to [Haven] EEOI began on or around December 2023 and continued through June 2024 . . . ."); *id.* ("As of today, Atlantic Companies no longer have any patients, assets, or earning capacity—it has all been swept to Jamin's entities."); *id.* at 11 ("Defendants have *already* removed all of Atlantic Companies' remaining patients and income earning capacity into their insider entity [Haven] EEOI—out of the reach of Plaintiffs.") (emphasis added).) And Plaintiffs only assume "it is likely Defendants will simply transfer Atlantic Companies' patients, assets, and earning capacity through their many organizations until they can no longer be traced." (*Id.* at 6.) Plaintiffs' argument that the property is in imminent danger of being lost could therefore reasonably be interpreted as speculative, which does not support receivership. *See Metro. Life Ins.*, 2019 WL 4316515, at \*4 (holding that the movant had "not shown that the property [was] in

imminent danger of being diminished" because although funds were withdrawn, the movant did not argue that funds were "currently" being withdrawn).

In addition, Plaintiffs waited months to file their initial motion to appoint a receiver, again suggesting a lack of imminency. *See Giancaspro v. Network Travel Experiences, Inc.*, No. CV 22-5745-JFW(Ex), 2022 WL 19569513, at *3 (C.D. Cal. Nov. 3, 2022) (denying motion to appoint receiver even against allegations that the defendants were "moving assets and revenues offshore" in part because the plaintiff "waited nearly seven weeks after filing his Complaint to file his Motion for Receiver"); *McCool v. Wilson*, No. EDCV 19-2499 PSG (KKx), 2020 WL 5044193, at *4 (C.D. Cal. Apr. 29, 2020) ("[T]he fact that Denise delayed for more than a month in seeking the appointment of a receiver undercuts her assertion that this crisis warrants extraordinary relief . . . .").

That said, the allegations of patients, funds, and/or information being transferred from the Atlantic Companies to affiliated entities—which the parties do not appear to dispute as to some of the transfers—suggests that if the parties in this case "were to have access to the [Atlantic Companies], there is a possibility that [property] could be concealed or lost by transfer . . . in response to the litigation in this case." *Magma Holding*, 2020 WL 2025365, at *10. And the recent activity of entering into loans that put at least one of the Atlantic Companies in imminent risk of failure adds to this risk.

Accordingly, the Court finds this factor weighs in favor of appointing a receiver.

### D.     Inadequate Legal Remedies

The fourth factor is "whether legal remedies are inadequate." *Can. Life*, 563 F.3d at 844. Plaintiffs appear to argue that this factor necessarily weighs in their favor because the Arizona receiver statute, A.R.S. § 12-1241, does not require that a party seeking a receiver make any showing on this point. (Doc. 93 at 12.) The Court rejects this argument because federal law, not state law, applies to appointments of a receiver in federal court. *See Can. Life*, 563 F.3d at 842 ("Not only does Rule 66 require application of the federal rules in an action where the appointment of a receiver is sought, it specifically indicates a normative standard for uniform administration of receiverships in accordance with the historical

practice in federal courts." (quotation marks omitted)); *see also Zuccarini*, 596 F.3d at 701 ("Rule 66 prevails over any state law to the extent it applies."). That Arizona law does not require a party moving for a receiver to show that legal remedies are inadequate is thus of no matter here.

Plaintiffs also allege that the evidence that Defendants entered predatory loans and transferred assets from the Atlantic Companies means they cannot be trusted with the assets, and no legal remedy is adequate to prevent further harm to Plaintiffs. (Doc. 93 at 12-13.)   In response, Defendants argue that the legal remedies are adequate because monetary damages are an adequate remedy to Plaintiffs should Defendants be liable. (Doc. 103 at 6.)

The compensatory and equitable relief Plaintiffs seek in this case would generally weigh against a finding that the legal remedies sought are inadequate. *See Semiserve*, 2015 WL 12914382, at *6 ("Plaintiffs' FAC seeks compensatory damages, exemplary damages, and an accounting, in addition to injunctive relief. Therefore, Plaintiffs themselves suggest that, at least to a certain extent, damages can compensate them for their injuries."). Additionally, Plaintiffs only speculate that all the disputed assets will be diminished prior to conclusion of the litigation. This is also typically insufficient to show an inadequate remedy. *See Zhou v. Fu*, No. 3:24-CV-01944-AB, 2025 WL 1099101, at *3 (D. Or. Apr. 11, 2025) (finding this factor weighed against appointing a receiver where "Plaintiffs speculate[d] that all the assets [would] be gone prior to conclusion of the litigation").

But, as discussed above, Defendants Jamin Ruark and Matthew Saagman admitted that their actions of entering predatory loans would cause Plaintiffs to suffer imminent risk of business failure. This suggests that the property has a likelihood of being diminished and Plaintiffs may not be able to receive proper monetary damages if they prevail. (Doc. 93 at 12-13); *see HSBC Bank USA, Nat'l Ass'n v. ZNM Holdings, Inc.*, No. SACV 09-01000-JVS (MLGx), 2010 WL 11558087, at *3 (C.D. Cal. Apr. 19, 2010) ("Even if judgment is entered in favor of HSBC, this does not account for the current state of the property interest and the fact that the interest may become worthless before final resolution

of the case."). Additionally, Plaintiffs "seek[] to ensure that the value [they] allegedly retain[] in these companies is not mismanaged or squandered by [the defendants] through improper financial transactions." *Magma Holding*, 2020 WL 2025365, at *10.

Accordingly, the Court finds that this factor ultimately weighs in favor of appointing a receiver.

### E.    Balance of Harms

The fifth factor is whether the harm to Plaintiffs by denial of the appointment outweighs injury to Defendants. *Can. Life*, 563 F.3d at 844. Plaintiffs argue that they will be harmed because Defendants will "waste, diminish, and misappropriate assets" prior to the conclusion of this case. (Doc. 93 at 13.) Plaintiffs state that Defendants will not be harmed by appointment of a receiver because a receiver will "simply comply with the law and not permit improper disbursement of funds or improper or wasteful use of transfer of assets." (*Id.*) In response, Defendants argue that a receivership "could cripple Haven EEOI's business and otherwise cause the Defendants irreparable financial harm." (Doc. 103 at 6.) Defendants further argue that they would be unable to pay the nearly $10 million dollars in debt owed to the United States pursuant to the DOJ and IRS settlements. (*Id.*) The Court finds that Defendants do not demonstrate how a receivership will cripple Haven EEOI's business. (*See id.*)

Thus, the Court finds this factor weighs in favor of appointing a receiver.

### F.    Probability of Success and Irreparable Injury to Interest

The sixth factor is Plaintiffs' probability of success in this action and the "possibility of irreparable injury to [P]laintiffs' interest in the property." *Can. Life*, 563 F.3d at 844. The Court cannot fully determine the probability of Plaintiffs' success in this action or if there will be irreparable injury to their interest due to a lack of an established record at this stage of the case. Also, as Defendants note (Doc. 103 at 7), "monetary injury is not normally considered irreparable," *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). Additionally, Plaintiffs have not shown that any of the alleged transfers of patients or funds caused *irreparable* injury or, in other words, injury

that cannot be compensated by damages or other relief to which they are entitled if they prevail. *See Zhuhai Dingfu Phase I Indus. Energy Conservation Inv. Fund, LP v. Zhang*, No. 8:23-cv-02059-MRA-JDE, 2025 WL 2093411, at *2 (C.D. Cal. July 16, 2025) ("Petitioner fails to show that the result of Respondent's alleged asset transfers is indeed *irreparable* prejudice. Petitioner makes no showing, for example, that Respondent's assets will be beyond this Court's jurisdiction, and speculative injury cannot be the basis for a finding of irreparable harm." (citation modified)).

Accordingly, the Court finds this factor to either be neutral or weigh slightly against appointing a receiver.

### G.    Interest Well-Served

The seventh and final *Canada Life* factor is whether Plaintiffs have shown that the interests they seek to protect will in fact be well-served by receivership. *Can. Life*, 563 F.3d at 844. "*Federal Practice and Procedure* highlights a number of well-established contexts in which [] receivership[s] [are] thought to be appropriate," such as where (1) "a secured creditor, lienholder, or mortgagee seeks receivership to end a foreclosure suit or any other action to enforce one or more outstanding liens"; (2) "a judgment creditor seeks a remedy for taking possession of a judgment debtor's property"; (3) "a judgment creditor seeks to set aside allegedly fraudulent conveyances by the judgment debtor"; (4) "a judgment creditor has had execution issued and returned unsatisfied"; or (5) "a judgment creditor is otherwise attempting to preserve property until its claim can be satisfied." *Tryke Mgmt. Servs. LLC v. Linx Card Inc.*, No. CV-19-05324-PHX-SRB, 2020 WL 9258369, at *5 (D. Ariz. Feb. 27, 2020) (alterations in original) (quotation marks omitted). "Central to each of these well-established contexts is that the party seeking receivership demonstrates the existence of more than a mere claim." *Id.* (quotation marks omitted).

Plaintiffs argue that a "receiver will prevent any further waste and misuse of the assets, ensure the opportunity for a proper accounting, and protect Plaintiffs' legal and equitable rights and remedies in the assets." (Doc. 93 at 15.) In response, Defendants argue that it would be out of the ordinary to appoint a receiver because Plaintiffs have claims for

money damages, and Plaintiffs are not the judgment creditor or a secured creditor. (Doc. 103 at 7-8.) Defendants are correct that most contexts in which receiverships are appropriate involve judgment creditors. *See Tryke Mgmt. Servs.*, 2020 WL 9258369, at *5. However, appointing a receiver for executing judgment is just one scenario where appointing a receiver may be necessary.

For the reasons discussed above, the Court agrees with Plaintiffs that a receiver will prevent further waste and misuse of assets. Thus, this factor weighs in favor of appointing a receiver.

### H.     The *Canada Life* Factors Conclusion

On balance, the Court finds that the *Canada Life* factors weigh in favor of appointing a receiver. While the appointment of a receiver is an "extraordinary equitable remedy," it is appropriate here. *Can. Life*, 563 F.3d at 844-45. The appointment of a receiver is supported by a majority of the *Canada Life* factors in this case and there is "clear necessity to protect plaintiff's interests in the property." *Solis*, 563 F.3d at 437 (citation omitted). Therefore, Plaintiffs' Motion for Appointment of Receiver will be granted.

Although Defendants argue that a bond should be required if a receiver is appointed, Defendants' cited authority does not persuade the Court that such is required in these circumstances. (Doc. 103 at 8.) Thus, the Court denies Defendants' request for a bond. Also, the Court agrees with Plaintiffs that James E. Cross, Esq. is qualified to be appointed receiver in this action. (Doc. 93 at 15.)

That said, the question remains as to which entities will be subject to receivership. Plaintiffs request a receiver over the Atlantic Companies and Haven EEOI. Although the Court agrees that a receiver is warranted over the Atlantic Companies, Plaintiffs have not met their burden of showing that a receivership is warranted over Haven EEOI. Appointing a receiver over the Atlantic Companies would likely preclude affiliated entities from using their inside access or control to further take any remaining patients, funds, or information, whether lawful or not. But Plaintiffs have not demonstrated that there is a similar need for a receiver to manage Haven EEOI or that the same harm would result from permitting

Haven EEOI to continue to control its operations such that Plaintiffs have no adequate remedy besides a receivership. *See Power Support (USA), Inc. v. Power Support, Ltd.*, No. CV 12-10900 BRO (FFMx), 2013 WL 12113231, at *5 (C.D. Cal. June 7, 2013) (finding that the "drastic relief [of receivership was] unwarranted" in part because the entity had "every incentive to maintain the company's assets and grow them" and the alleged conduct could be "remedied by money damages"); (*see* Doc. 103 at 7 (stating that "Defendants have met their obligations under the U.S. and IRS Settlements; *i.e.*, the original obligation of $22,982,944 has been reduced to 9,566,565.23")). The allegations and argument in support of receivership pertaining to Haven EEOI are speculative at best. (*See* Doc. 93 at 11-12 ("If a receiver is not appointed to control the Atlantic Companies' assets that have been illegally diverted to [Haven] EEOI and to control the flow of income, Defendants *could* further dissipate Atlantic Companies' assets beyond the Court's reach . . . ." (emphasis added)).) There is thus not the "clear necessity" to appoint a receiver over Haven EEOI that is present with regard to the Atlantic Companies. *See Solis*, 563 F.3d at 437 (citation omitted).

The Court will therefore appoint a receiver over the Atlantic Companies but not over Haven EEOI. To the extent additional evidence is obtained over the course of litigation establishing an imminent need for a receiver over Haven EEOI, Plaintiffs may renew their motion as to Haven EEOI. *See, e.g.*, *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2020 WL 954958, at *15 (D. Ariz. Feb. 27, 2020) (rejecting request to modify an injunction to allow two affiliates to continue operating because the "receiver's report [made] clear that [the] businesses [were] hopelessly entangled . . . and observe[d] no corporate formalities" such that there was "no practical way to disaggregate them").

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting in part Plaintiffs' Amended Motion to Appoint Receiver (Doc. 93).

. . . .

**IT IS FURTHER ORDERED** appointing James E. Cross, Esq. as receiver for Atlantic Home Healthcare, LLC dba Haven Home Health and Atlantic Home Healthcare, LLC.

**IT IS FURTHER ORDERED** that the parties must meet and confer and submit a proposed order setting forth the terms of the receivership no later than **April 16, 2026**.

**IT IS FINALLY ORDERED** that if the parties are unable to agree on the terms of receivership, each party may submit a proposed order.

Dated this 26th day of March, 2026.

Michael T. Liburdi
United States District Judge